UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-CV-24550-TURNOFF

FELIPE ERNANI, *et al.*,

    Plaintiffs,

vs.

**CONSENT**

CITY OF MIAMI BEACH, *et al.*,

    Defendants.
_____/

## ORDER ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Mynt Holding Company, LLC's Motions for Partial Summary Judgment. (ECF No. 69, 71). A hearing was held before the undersigned on September 3, 2014. (ECF No. 97). The Court granted both motions in open court upon consideration of the written and oral arguments, the record, and the applicable law. The oral pronouncements, reasoning, and comments made by the undersigned in open court, as well as the transcript of the hearing (ECF No. 105), are hereby incorporated by reference into this Order.

**Background**

In 2002, Defendant Mynt Holding Company, LLC ("Mynt"), applied to have Defendant City of Miami Beach ("CMB") off-duty police officers provide additional security for the nightclub known as Mynt. The application set forth the scope of services to be provided by the CMB. The off-duty assignments were selected by a CMB Police Department off-duty coordinator. Neither Mynt nor the individual police officers had a choice over who would be stationed at Mynt in an off-duty capacity. The police officers were governed by a sixteen-page CMB off-duty policy manual. Mynt

paid the CMB directly, who then paid the police officers for their off-duty services. Mynt did not instruct the police officers on how to carry out their duties. Mynt's employees had minimal interaction with the police officers. Questions regarding a particular assignment, such as the one in this case, were to be directed to the CMB off-duty coordinator, not to Mynt.

On the evening of October 31, 2010, Plaintiffs Felipe and Andrea Ernani, a Brazilian married couple, were at Mynt with friends. That night, Defendant Police Officers Roger Martinez and David Socarras were stationed outside of Mynt in an off-duty capacity, wearing their CMB Police Department uniforms. According to the Complaint, Mynt's security personnel, who were hired and directly paid by Mynt, approached the Ernanis, removed a glass of champagne from Mrs. Ernani's hand, and made physical contact with her. Mr. Ernani attempted to defend his wife when the security personnel threw him against the wall and ejected him from the nightclub. Once outside, the off-duty police officers descended upon Mr. Ernani, and they became involved in a physical altercation. Mr. Ernani, who sustained injuries from the beating, was handcuffed and placed inside a CMB police vehicle where he remained for several hours. Upon being released the following evening, he was admitted at Aventura Hospital for treatment of a concussion, brain bleed, and moderate-to-severe spinal injury.

On December 28, 2012, the Ernanis filed a Complaint against Defendants City of Miami Beach, Officer David Socarras and Officer Roger Martinez, both of the Miami Beach Police Department, and Mynt Holding Company, LLC d/b/a Mynt. (ECF No. 1). Among the damages claimed, Plaintiffs claimed past and future economic loss. According to Plaintiffs, Mr. Ernani is a principal in and owns 5-10% of a Brazilian import/export company called Aste Group. The company was to be a liaison for a sales transaction between the New Balance shoe company and a Brazilian

company named Centauro. Ernani was scheduled to meet with representatives from both companies in Boston, MA. Because of this incident, Ernani was unable to attend the business meeting. The representatives of his company who attended in his absence did not speak English. Although Centauro made a purchase order, it was not as large as expected by Ernani. Without providing any supporting documentation, Ernani estimated that the purchase order would have been greater by approximately $1 million had he been present at the meeting. He claimed that his absence affected the size of the order, thereby resulting in lost profits as follows: had the order been larger, the commission to Aste Group would have been larger, and ultimately, would have yielded greater personal income to him. Mr. Ernani alleged also that, as a result of the incident, he was prevented from entering the United States and conducting further business while criminal charges against him were pending.

Mynt filed two motions for partial summary judgment against Plaintiffs on the issues of agency and damages.

## Summary Judgment Standard

The entry of summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact is on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party supports its motion with affidavits or other evidence, the party opposing the motion must provide evidence setting forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Summary judgment is not proper "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995). An issue of fact is "material" if it might affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. Id. Summary judgment should be denied if reasonable minds could differ on the inferences arising from undisputed facts. Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity and Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. 242). The court may grant summary judgment if the evidence set forth by the non-moving part is "merely colorable or is not significantly probative." Anderson, 477 U.S. at 249-50.

On a summary judgment motion, the record and all reasonable inferences are to be drawn in the light most favorable to the non-moving party. Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999). In considering a motion for summary judgment, the Court cannot make credibility determinations, such as between contradictory affidavits. Miller v. Harget, 458 F.3d 1251, 1256 (11th Cir. 2006). At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists. Anderson, 477 U.S. at 249.

## I. Motion for Summary Judgment regarding agency. (ECF No. 69).

In the Motion for Summary Judgment regarding agency (ECF No. 69), Mynt sought a ruling from the court that, as a matter of law, the off-duty police officers were not agents or employees of Mynt. Mynt argued that, if the off-duty police officers were not agents or employees of Mynt, then it could not be held vicariously liable for their actions under a theory of agency. Although Plaintiffs argued that there was sufficient record evidence to find that an agency relationship existed between the off-duty police officers and Mynt, thus precluding summary judgment, they have failed to show that the police officers were acting as agents of Mynt.

Under Florida law, "[t]he existence of an agency relationship is ordinarily a question to be determined by a jury in accordance with the evidence adduced at trial." Orlando Executive Park Inc. v. Robbins, 433 So.2d 491, 494 (Fla. 1983). The question of whether an agency relationship existed may be resolved by summary judgment only in instances where "the evidence is capable of just one interpretation." Kobel v. Schlosser, 614 So.2d 6, 7 (Fla. 4th DCA 1993) (reversing summary judgment below which had found no liability on a theory of agency). This is such a case.

In Florida, an agency relationship may be established by showing control and domination by one party over another. Citibank, N.A. v. Data Lease Fin. Corp., 828 F.2d 686, 691 (11th Cir. 1987) (citing Florida cases). The elements of an actual agency relationship are "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." Kaloe Shipping Co. Ltd. v. Goltens Service Co., Inc., No. 06–22186–CIV, 2011 WL 677372, at *4 (S.D. Fla. Feb.16, 2011) (quoting Attorney's Title Ins. Fund, Inc. v. Regions Bank, 491 F.Supp.2d 1087 (S.D. Fla. 2007)) (citing Goldschmidt v. Holman, 571 So.2d 422, 424 n. 5 (Fla. 1990)). An agency relationship may be created expressly by agreement

of the parties or impliedly based on past dealings between the parties. Sapp v. City of Tallahassee, 348 So.2d 363, 367 (Fla. 1st DCA 1977). Florida law also recognizes the doctrine of apparent agency, where a principal creates the appearance of an agency relationship through its actions. Roessler v. Novak, 858 So.2d 1158, 1161-62 (Fla. 2d DCA 2003). For apparent agency, the following elements must be shown: (1) a representation by the purported principal; (2) a reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation. Id. at 1161; Franza v. Royal Caribbean Cruises, Ltd., No. 13-13067, 2014 WL 5802293, at *22 (11th Cir. Nov. 10, 2014).

Plaintiffs asserted that the off-duty police officers were agents of Mynt because Mynt controlled the off-duty police officers' services, behavior, hours, and stations; the police officers were assigned to Mynt exclusively based upon the number of times they were assigned to that location; the police officers were standing within the velvet ropes of the nightclub; and the Mynt security guards worked as a team with the off-duty police officers.

According to Plaintiffs, within the past two years, Officer Socarras had worked at Mynt 148 times, suggesting that he had a choice as to where he would be stationed in an off-duty capacity. However, Plaintiffs failed to show how the choice of assignment equated to an employment or agency relationship between the parties. Further, Plaintiffs argued that the police officers and the security guards worked as a team to provide security as evidenced by the fact that the security guards alerted the off-duty officers regarding a problem inside the club. Mynt correctly argued that notifying a police officer about a problem did not give the person making the notification control over the police officer's actions in response. There was simply no evidence presented that Mynt directed the officers to act in a certain way.

Moreover, there was no evidence that Mynt exercised control or domination over the police officers while they were standing outside the nightclub, even if Mynt chose the location in which the police officers were to stand. See, Martinez v. Miami-Dade County, No. 12-23534-CIV, 2014 WL 3591595, at * 4 (S.D. Fla. Jul. 21, 2014) (finding that the choice of location by the defendant was insufficient to establish a duty owed to patrons to supervise or control the police officers). The record shows that the police officers were employed by the CMB, not Mynt; that they were paid by the CMB; that the CMB off-duty coordinator, not Mynt, decided which officers would be staffed; that they were governed by CMB policies at all times during their off-duty assignments; and that they were certainly CMB employees at the point of effectuating the arrest.

Mynt relied upon Perkins v. Tolen, No. 3:10-cv-851-J-37TEM, 2012 WL 1656773 (M.D. Fla. May 10, 2012), where the plaintiff was injured allegedly as a result of an incident with an off-duty officer on the defendant's premises. The defendant moved for summary judgment on the state law claims of false imprisonment and battery against it under a respondeat superior/vicarious liability theory for the alleged acts of the police officer asserting that the police officer was an independent contractor. Noting the Florida Supreme Court's adoption of the test in the Restatement § 220 for determining whether an employment relationship existed, the district court analyzed the various non-exclusive factors and concluded that, given the evidence, no reasonable jury could find that the police officer was an employee of the defendant when he effected the plaintiff's arrest. In granting summary judgment in favor of the defendant, the district court found persuasive the fact that another police officer coordinated the staffing effort, determined the number of officers that would work a given location, and approved the hours worked, and that the defendant had no control over the law enforcement decisions made by the officer, or the means by which the officer carried out his job.

Moreover, the Perkins court found that the plaintiff's reliance on Cirou v. Basler, 432 So.2d 628 (Fla. 3d DCA 1983), and McWain v. Greyhound Lines, Inc., 357 So.2d 780 (Fla. 3d DCA 1978), upon which Plaintiffs in this case relied, was misplaced.

For much the same reasons, the undersigned finds that the police officers in this case were not employees/agents of Mynt. The record showed that the police officers and their off-duty assignments were selected by a CMB Police Department off-duty coordinator (ECF No. 68-13); that police officers could be assigned to any type of duty, at any location (ECF No. 68-16); and that off-duty assignments were not mandatory and could be refused by an officer (ECF No. 68-17). The record further showed that Mynt had no control over the law enforcement decisions made by the police officers or the means by which the police officers were to carry out their duties or conduct themselves while they were working at Mynt in an off-duty capacity. Rather, the police officers governed themselves by an off-duty policy provided by the CMB Police Department. (ECF No. 68-20). Questions regarding how an assignment was to be performed were to be directed to the CMB off-duty coordinator. (ECF No. 68-22). The police officers were, at all times, police officers employed by the CMB. (ECF No. 68-23). They were subject to the policies of the CMB Police Department and were obligated to conduct themselves in a manner consistent with their obligations as police officers for the CMB. (ECF No. 68-24). Moreover, the police officers were wearing the CMB Police Department uniforms at all times during the off-duty assignments. (ECF No. 68-27).

Officer Socarras testified that, when he worked off-duty assignments, he got paid a fixed rate directly by the CMB, (ECF No. 77-5) at p. 6, l. 12-13; (ECF No. 68-2) at p. 13, l. 10, and that any questions regarding off-duty work were directed to the CMB Police Department off-duty coordinator. (ECF No. 68-2) at p. 12, l. 7-9, 15-16. Officer Martinez testified that he did not get to

choose the location of the off-duty assignments (ECF No. 68-1) at p. 8, l. 20-21; that Mynt did not instruct him as to what he should be doing while working in an off-duty capacity at Mynt, (ECF No. 68-1) at p. 18-19, l. 23-3; and that he did not receive instructions from Mynt's security guards either. (ECF No. 68-1) at p. 19, l. 9-12. Instead, they were governed by a 16-page off-duty policy manual issued by the CMB Police Department. (ECF No. 68-1) at p. 19, l. 16.

Furthermore, when they arrested Plaintiff, the police officers were acting within the scope of their duties as police officers for the CMB. Florida and other states have held that police officers who serve as off-duty security officers act within the scope of their police duties when attempting arrests while off-duty. See, State v. Hartzog, 575 So.2d 1328, 1331 (Fla. DCA 1987) (finding that a defendant properly could be convicted of "battery of a law enforcement officer" when a police officer, while acting as an off-duty security officer, identified himself as a police officer prior to the defendant's assault); State v. Phillips, 205 W.Va. 673, 520 S.E.2d 670, 681 (W.Va. 1999) (noting that many jurisdictions, including Florida, "have concluded . . . that police officers moonlighting for private employers as security guards or similar peacekeepers are engaged in official duties for purposes of officer assault statutes or statutes defining aggravated circumstances when, during the course of such secondary employment, they react to incidents of what may be criminal or disorderly conduct.").

Plaintiffs also claimed that Mynt was negligent in hiring and supervising the police officers and the security guards. Plaintiffs argued that several instances of excessive force had been documented for both Officers Socarras and Martinez during their off-duty assignments at Mynt, and that separate internal affairs investigations for other instances as to both police officers had been made previously. Despite this history, Plaintiffs argued, Mynt allowed the officers to continue

working on the premises in their off-duty capacity.

Because the undersigned finds that the police officers were not employees or agents of Mynt, then Mynt cannot be held vicariously liable for the actions of the police officers. See, Martinez, 2014 WL 3591595, at * 4 (finding that "[u]nder Florida law, an employer cannot be held vicariously liable for the acts of an independent contractor; the employer can only be held vicariously liable for the acts of an employee/agent."). Moreover, as correctly argued by Mynt, if the police officers were not agents or employees of Mynt, then Mynt could not be held liable either for the claims of negligent supervision and negligent hiring pertaining to the police officers. With respect to the security guards, Plaintiffs indicated that they were not pursuing the negligent hiring claim against Mynt with respect to the hiring of the security guards. However, the negligent supervision claim against Mynt for the actions of the security guards remains at issue for trial.

## II.     Motion for Summary Judgment regarding lost income (ECF No. 71).

Mynt moved for partial summary judgment on Plaintiffs' lost income claim on the basis that it was speculative and that Plaintiffs had presented no evidence supporting same. Plaintiffs argued that Mr. Ernani's testimony was sufficient to maintain a lost profits claim. Moreover, despite his allegation of a loss of ability to earn money in the future, Plaintiff acknowledged that he had no ongoing losses. Mynt argued that Plaintiffs provided only self-serving testimony about the amount of profits that were lost. The undersigned agrees.

To recover lost profits, a plaintiff must prove: that there was a breach of contract; that a loss was a proximate result of the breach; that the loss was, or should have been within the reasonable contemplation of the parties; and that the loss was not remote, contingent, or conjectural, and the damages were reasonably certain. Lipscher v. LRP Publications, Inc., 266 F.3d 1305, 1317 (11 Cir.

2001) (citations omitted). Here, the evidence presented was insufficient to establish a lost profits claim. There was no basis to claim that the purchase order would have been larger had Ernani been present at the sales meeting. In fact, the profits claim was based upon profits generated from one sale, and Plaintiffs did not provide concrete figures as to subsequent sales transactions between these parties. Plaintiffs presented a purely speculative claim which was unsupported by any figures or documents. Indeed, Plaintiffs admitted that they had not provided the information regarding their lost income claim. As such, the undersigned grants Defendant's summary judgment motion as to Plaintiffs' lost income claim.

## Conclusion

Accordingly, as stated in open court and memorialized herein, it is hereby **ORDERED AND ADJUDGED** that Defendant Mynt Holding Company, LLC's Motion for Partial Summary Judgment regarding agency (ECF No. 69) is **GRANTED**; and the Motion for Partial Summary Judgment regarding lost income (ECF No. 71) is **GRANTED**.

**DONE AND ORDERED** in Chambers, at Miami, Florida, this ___ day of December 2014.

WILLIAM C. TURNOFF
United States Magistrate Judge

cc: Hon. Marcia G. Cooke
Counsel of record